NOT FOR PUBLICATION (Docket No. 19)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MARYANN COTTRELL and RICHARD HOLLAND, | : : : : | |
| Plaintiffs, | : : | Civil No. 08-1738 (RBK/KMW) |
| v. | : : | **OPINION** |
| GOOD WHEELS, et al., | : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by Defendants Good Wheels; Cucunato, Inc.; Carmine Cucunato; Christine Cucunato; and Seth Fox (collectively "Defendants") to dismiss Counts I, II, and III of the Amended Complaint of Plaintiffs Maryann Cottrell and Richard Holland (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs' Amended Complaint brings claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the New Jersey Law Against Discrimination ("LAD"), N.J. STAT. ANN. § 10:5-1 et seq., the New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-1 et seq., and New Jersey common law. Defendant moves to dismiss all claims except the common law claim of false imprisonment. For the reasons discussed, Defendants' motion will be granted as to Plaintiff Cottrell and denied as to Plaintiff Holland.

**I.     BACKGROUND**

Plaintiffs' claims arise from their interaction with Defendants at the Good Wheels car dealership. Specifically, Plaintiffs assert that Defendants have a policy of allowing non-disabled employees to park in the designated handicapped parking spaces at Good Wheels.

**A.     Facts[1]**

Ms. Cottrell and Mr. Holland live together and care jointly for Ms. Cottrell's severely disabled child. Plaintiffs are self-described advocates for the disabled who receive media attention for their efforts to ensure disabled persons' access to public accommodations. Specifically, those efforts include Ms. Cottrell contacting local authorities about businesses and other public places that do not provide the requisite access to disabled persons, either through a failure to maintain handicapped accessible parking or a failure to discourage the unauthorized use of handicapped parking spaces. In furtherance of those efforts, Ms. Cottrell has lodged numerous citizen's complaints regarding violations of handicapped parking regulations. As a result of these activities, Plaintiffs are not infrequently banned from reentering facilities against which they have lodged complaints.

Plaintiffs allege that on several visits to Good Wheels, they observed vehicles not tagged for handicapped parking nonetheless parked in handicapped parking spaces, access aisles, and/or

---

[1] Because a district court must treat the allegations in the complaint as true for purposes of considering a motion to dismiss, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), the statement of facts is taken from the allegations contained in Plaintiffs' Amended Complaint. Because a court may consider affidavits attached to the moving papers for the purpose of ascertaining whether it has jurisdiction, New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. Jan. 13, 2000) (citing Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1281 n.4 (3d Cir. 1993)), the facts contained in the Certifications of Richard Holland and Carmine Cucunato are also recited where relevant.

passenger loading zones.  On numerous occasions, the owners of the unlawfully parked cars were employees of Good Wheels.  As a result, Ms. Cottrell photographed and made notes regarding said vehicles and reported the violators via citizen's complaints.

Mr. Holland certifies that motorcycles and cars constitute one of his hobbies.  He enjoys "scanning car lots for good deals and will often buy a used car and resell it at a profit." (Cert. of Holland at ¶ 5.)  Mr. Holland's friends frequently ask him for help in finding and evaluating vehicles for purchase, and he takes great pleasure in being of assistance to them.  On April 8, 2006, Mr. Holland alleges that he visited the Good Wheels facility to help a friend evaluate vehicles.  Mr. Holland was recognized by employees at Good Wheels; however, and Defendant Seth Fox, acting on behalf of Defendant Good Wheels, allegedly blocked Mr. Holland from exiting the Good Wheels premises and told him that he was no longer welcome to return.

### B. Procedural History

On April 8, 2008, Plaintiffs filed a Complaint against Defendants alleging two counts of discrimination in violation of the ADA and LAD, two counts of retaliation in violation of same, one count of a violation of the New Jersey Civil Rights Act, and one count of false imprisonment in violation of the common law of New Jersey.

On May 5, 2008, Defendants moved to dismiss all counts of the Complaint, except for the false imprisonment claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In their moving papers, Defendants argued, <u>inter alia</u>, that Plaintiffs lacked standing because they did not fall within the zone of interests protected by the ADA and LAD. Noting that Defendants failed to address Article III's standing requirements, the Court denied Defendants' motion to dismiss and ordered Plaintiff's to file an Amended Complaint

"comporting with the requirements of Article III of the Constitution." Cottrell v. Good Wheels, No. 08-1738, 2008 WL 4792546, at *4 (D.N.J. Oct., 31, 2008).

Plaintiffs filed an Amended Complaint on December 1, 2008.[2] The Amended Complaint contains additional averments in support of standing. Plaintiffs allege that Defendants allow and encourage members of the general public to enter their premises for the purposes of purchasing cars, comparing prices, accompanying others, using the restrooms, and asking for directions. Plaintiffs further allege that, as a result having their "status as business invitees revoked," they no longer have the benefit of Defendants' public accommodation and cannot conduct any of the aforementioned activities. (Pls.' Am. Compl. at ¶¶ 31-34.) The Amended Complaint continues to allege retaliation in violation of the ADA and LAD in Counts One and Two, as well as a violation of the New Jersey Civil Rights Act and false imprisonment in Counts Three and Four, respectively. The Amended Complaint no longer contains the substantive discrimination claims.

On January 14, 2009, Defendants filed the present Motion to Dismiss Counts One, Two, and Three of the Amended Complaint for lack of standing and for failure to state a claim. On February 2, 2009, Plaintiffs filed an Opposition Brief to Defendants' Motion to Dismiss, which contained a certification by Plaintiff Richard Holland wherein Mr. Holland alleged that cars and motorcycles constitute one of his hobbies, that he enjoys scanning car lots for good deals, that he will often buy a used car and resell it at a profit, and that he frequently accompanies friends to

---

[2] Four days after filing the Amended Complaint, and without leave of court, Plaintiffs filed a Second Amended Complaint, which is substantively identical to the Amended Complaint. The counts alleged in the Amended Complaint did not follow sequence, nor did the numbered paragraphs following paragraph fifty-two. The Second Amended Complaint simply fixes these typographical errors. Thus, for ease of reference and because no prejudice to Defendants will result, the Court will adopt the numbering convention of the Second Amended Complaint.

local dealerships to help them do the same. Defendants' filed a Reply Brief, attached to which was the certification of Good Wheels owner, Mr. Cucunato, indicating that he is "willing to rescind order of criminal trespass against Ms. Cottrell and Mr. Holland." (Defs.' Reply Br. at 7.)

## II.     Applicable Standards

Although styled as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, Defendants' assertion that Plaintiffs lack standing is technically an attack on this Court's subject matter jurisdiction and is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1). See Mars Inc. v. JCM Am. Corp., No. 05-3165, 2008 WL 5401604, at *2 (D.N.J. Dec. 23, 2008) (citing Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).

### A.     Federal Rule of Civil Procedure 12(b)(1) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In the second type of 12(b)(1) motion, the court does not presume that the allegations in the plaintiff's complaint are true, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. In such a case, "the court can consider affidavits attached to the moving papers or even require such affidavits to be submitted." New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. Jan. 13, 2000) (citing Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277,

1281 n.4 (3d Cir. 1993)).  Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction.  Mortensen, 549 F.2d at 891.  If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice.  In re Orthopedic "Bone Screw" Prod. Liab. Litig., 132 F.3d 152, 155-56 (3d Cir. 1997).

Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998).  The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996).

At the pleading stage, therefore, the plaintiff must allege facts sufficient to establish his standing to invoke the court's jurisdiction.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.  Thus, [plaintiffs] in this case must allege facts essential to show jurisdiction.  If they fail to make the necessary allegations, they have no standing." (internal alterations, omissions, quotation marks, and citations omitted));  Warth v. Seldin, 422 U.S. 490, 517-518 (1975) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention.  It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.");

Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts [satisfying the elements of standing].").

Although it is the duty of the plaintiff to "clearly and specifically set forth facts sufficient to satisfy [the] standing requirements," the level of specificity necessary to avoid dismissal for lack of standing should not be "exaggerated." Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 86–87, 88 (3d Cir. 1991). At the pleading stage, the court may "presume that the general allegations in the complaint [as to standing] encompass the specific facts necessary to support those allegations." Steel Co., 523 U.S. at 104. Alternatively, however, it is "proper," and "'within the trial court's power,'" even on a motion to dismiss, "to require the [plaintiff] to go beyond . . . general allegations in the complaint and allege particularized facts supportive of its standing." Newark Branch NAACP v. Town of Harrison, 907 F.2d 1408, 1415 & n.10 (3d Cir. 1990) (quoting Warth, 422 U.S. at 501–02).

### B. Federal Rule of Civil Procedure 12(b)(6) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

### III. Discussion

Defendants claim that Plaintiffs' Amended Complaint should be dismissed because Plaintiffs lack standing and fail to make out a prima facie case of retaliation pursuant to the ADA or LAD. Defendants also claim that Plaintiffs' New Jersey Civil Rights Act claim is based upon the retaliation counts and should be dismissed upon the dismissal of Counts I and II.

#### A. Do Plaintiffs have Standing?

Plaintiffs argue that they have standing because Good Wheels' revocation of their status as business invitee's causes them injury. Accordingly, they have forfeited the "ability to shop, browse, accompany a friend, make ordinary inquiries," or enter the premises for any other reason such as to use the bathroom or inquire after directions. Mr. Holland alleges further that he can no longer pursue his hobby and practice of visiting Good Wheels' car lot for the purpose of browsing inventory, purchasing vehicles for resale, and advising friends on same.

The Third Circuit has articulated three requirements for Article III constitutional standing:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Defenders of Wildlife, 504 U.S. at 560-61); accord Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000). In Lujan v. Defenders of Wildlife, the Supreme Court expanded on the "actual or imminent" requirement, noting that "'some day'

intentions – without any description of concrete plans, or indeed even any specification of when the some day will be" are insufficient.  504 U.S. at 563.

### 1. Mr. Holland

The Court is satisfied that Mr. Holland has standing to bring this suit.  His hobby activities apparently require the ability to peruse local car-buying establishments.  Good Wheels is such a local car buying establishment; Mr. Holland has frequented it before for these purposes and alleges that he will continue to do so.  Although "past exposure to illegal conduct does not in itself show a present case of controversy regarding injunctive relief," Brown v. Fauber, 819 F.2d 395, 400 (3d Cir. 1987) (quoting O'Shea v. Littleton, 414 U.S. 488 (1974) (internal quotation marks omitted)), being banned from the Good Wheels facility in retaliation for his alleged enforcement activities clearly causes injury to Mr. Holland that is not speculative or conjectural.

Defendants counter that even if the ban caused injury, the Court cannot redress it because Good Wheels has since removed the ban.  At the outset, the Court notes that the sole remedy available to a plaintiff for a violation of the ADA's anti-retaliation provision is prospective injunctive relief.  Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004); Bowles v. Carolina Cargo, Inc., 100 Fed. Appx. 889, 890 (4th Cir. 2004) (unpublished per curiam opinion); Cottrell v. J & R Discount Liquor Gallery, Inc., No. 08-5418, 2009 WL 1085729, at *4 n.8 (D.N.J. Apr. 21, 2009); Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 (D.N.J. May 20, 2009).  But see, e.g., Muller v. Costello, 187 F.3d 298, 314 (2d Cir. 1999) (allowing compensatory damages for an ADA claim without analysis).  Thus, the Court must determine whether the injunction Plaintiffs request will redress the injury alleged.

Here, Good Wheels' recision of its ban does not obviate the case or controversy.  As

many courts have noted, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." Louisiana Counseling and Family Servs., Inc. v. Makrygialos, LLC, 543 F. Supp. 2d 359, 366 (D.N.J. 2008) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). Indeed, voluntary cessation will only render a case non-justiciable where it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). The timing of Defendants' offer to rescind, as well as the ease by which Defendants could conceivably re-institute the ban, convince the Court that the alleged injury could reasonably recur absent the requested relief. Accordingly, Mr. Holland has standing to sue.

### 2. Ms. Cottrell

On the other hand, the Court is not satisfied that Ms. Cottrell has suffered an injury in fact as a result of having her business-invitee status revoked. She does not allege that she has ever entered the Good Wheels facility at any time in the past. She does not allege that she intends to do so at any time in the future. All that Ms. Cottrell alleges is that she might someday desire to enter Good Wheels to request permission to use the bathroom or for help with directions. These "'some day' intentions" lack the imminency required to establish standing for injunctive relief under Article III. Defenders of Wildlife, 504 U.S. at 563. Accordingly, the Court will dismiss the Amended Complaint as to Ms. Cottrell without prejudice.

### B. Does Mr. Holland State a Claim?

Defendants argue that Mr. Holland fails to state a claim for retaliation under the ADA and

10

LAD because (1) he is not a protected person; and (2) his reporting activity is not a protected activity.

### 1. Do the ADA and LAD Protect Mr. Holland?

Defendants argue that Mr. Holland is not a protected person under the ADA or LAD because he is neither disabled nor an employee of Good Wheels.

The ADA consists of substantive provisions as well as an anti-retaliation provision. The anti-retaliation provision provides, in pertinent part, that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The substantive provisions, contained in the Act's first three subchapters, outline the acts and practices made unlawful. The first subchapter prohibits "covered entities" from discriminating against "a qualified individual on the basis of a disability . . . in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The second prohibits discrimination by public service entities. 42 U.S.C. § 12132. Finally, the third prohibits "any person who owns . . . or operates a place of public accommodation" from discriminating against any "individual" on the basis of a disability.[3] 42 U.S.C. § 12182(a).

Like the ADA, "the LAD contains both 'substantive' provisions and an anti-retaliation provision." Roa v. Roa, 955 A.2d 930, 937 (N.J. Super. Ct. App. Div. 2008). The substantive provisions prohibit, inter alia, disability discrimination in the provision of public

---

[3] The ADA defines a "public accommodation" to include a "sales or rental establishment" affecting commerce. 42 U.S.C. § 12181(7)(E).

accommodations.[4]  N.J. STAT. ANN. § 10:5-12(f).  The anti-retaliation provision makes it unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the LAD] . . . ."  N.J. STAT. ANN. § 10:5-12(d).

Thus, the plain language of both the ADA and the LAD clearly authorizes a retaliation suit by a non-disabled, non-employee in the context of public accommodations.  This plain reading of the statute is supported by the caselaw.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'"); J & R Discount Liquor Gallery, Inc., 2009 WL 1085729, at *4 ("In contrast to a discrimination claim, a claim for retaliation under the ADA and [the LAD] does not require a plaintiff to demonstrate that he is disabled."); Roa, 955 A.2d at 937 ("[B]y its terms [the LAD's anti-retaliation provision] is not limited to one's employer, but rather applies to the conduct of 'any person.'").

In support of its position that non-employee's cannot bring suit pursuant to the ADA's anti-retaliation provision, Defendants point to the Sixth Circuit's decision in Hiler v. Brown, 177 F.3d 542 (6th Cir. 1999).  In Hiler, an employee of the Department of Veterans Affairs Medical Center was denied a promotion and subsequently brought suit against his supervisors under the anti-retaliation provision of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794.[5]  Id. at 543-44.  The anti-retaliation provision of the Rehabilitation Act incorporates by reference the ADA's

---

[4]  The LAD defines "a place of public accommodation" to include "any producer, manufacturer, wholesaler, distributor, retail shop, store, establishment, or concession dealing with goods or services of any kind . . . ."  N.J. STAT. ANN. § 10:5-5(l).

[5]  "The Rehabilitation Act of 1973 prohibits discrimination and retaliation in employment against disabled persons by federal agencies."  Hiler v. Brown, 177 F.3d 542, 545 (6th Cir. 1999).

anti-retaliation language, providing that "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by [the ADA], as such sections relate to employment." Id. (citing 29 U.S.C. § 794(a) (1994)).  The district court concluded that the employee had a cause of action by interpreting the term "person" to mean any "individual." Id. at 545.  Reversing the trial court, the Sixth Circuit held, in a matter of first impression, that the Rehabilitation Act does not provide an employee with a cause of action against his supervisor in his individual capacity.  Rejecting the "surface appeal" of the district court's plain language analysis, the court reasoned:

> An individual seeking monetary or equitable relief for retaliation under the Rehabilitation Act must discern what remedies are available to them under Title VII.  The enforcement provisions of Title VII permit civil actions against "an employer, employment agency, labor organization, or joint labor-management committee . . . . An employer is further defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person.  Hence, individuals who are not employers under Title VII cannot be held personally liable for retaliation under the Rehabilitation Act.

Id. at 545-46 (internal citations omitted).

Contrary to Defendants arguments, the instant case is not governed by Hiler.  Although the Rehabilitation Act incorporates the anti-retaliation provision of the ADA by reference, it does so only as far "as such actions relate to employment." 29 U.S.C. § 794(d).  Moreover, the substantive ADA discrimination standards incorporated by Section 794(d) of the Rehabilitation Act are those contained in Title I of the ADA, which are codified at 42 U.S.C. §§ 12111 - 12117 and deal exclusively with the employment context.  By contrast, the ADA's anti-retaliation provision explicitly provides a cause of action for anyone who opposes a violation of any of the

three substantive ADA subchapters. See 42 U.S.C. § 12203(c). Indeed, reading the ADA's anti-retaliation provision as failing to provide a cause of action for disability retaliation outside of the employment context would effectively read subchapter two (dealing with discrimination by public service entities) and subchapter three (dealing with discrimination by public accommodations operated by private entities) out of the ADA.

The Court also disagrees with Defendants that this case is governed by the Third Circuit's unpublished decision in Veneziano v. Long Island Pipe Fabrication & Supply, 79 Fed. Appx. 506 (3d Cir. 2003) (unpublished opinion). In that case, the Third Circuit affirmed a trial court's grant of summary judgment to a defendant-insurance company on a plaintiff's claim of disability retaliation because the insurance company was not a "'covered entity' subject to the ADA." Id. at 511. In the three sentences devoted to explaining its reasoning, the court noted that the ADA's anti-retaliation provision "clearly applies only to employers. Since [the insurance company] is not [the plaintiff's] employer . . . it is not subject to ADA liability." Id. (citing Hiler, 177 F.3d at 545-47).

In light of the ADA's plain language and statutory scheme, the Court is hesitant to read this conclusory statement in an unpublished Third Circuit decision as an endorsement of the proposition that the ADA's anti-retaliation provision is limited to the employment context. To be sure, the insurance company in Veneziano was not the plaintiff's employer, but neither was it operating a public service or a public accommodation. Unlike the insurance company in Veneziano, Good Wheels operates a car sales establishment, which qualifies it as a public accommodation subject to the ADA's anti-discrimination provisions. See 42 U.S.A. § 12182(a). Thus, absent a more compelling command by the Third Circuit, this Court concludes that Mr.

14

Holland has alleged that he is a protected person under the ADA.  See J & R Discount Liquor Gallery, Inc., 2009 WL 1085729, at *4 n.6 (noting that Veneziano v. Long Island Pipe Fabrication & Supply, 238 F. Supp. 2d 683, 689 (D.N.J. 2002), "does not exactly stand" for the proposition that the ADA retaliation provision only applies to employers).

### 2. Was Mr. Holland Engaged in Protected Activity?

The Court also disagrees with Defendants' argument that filing a citizen's complaint against a business that allegedly failed to comply with ADA requirements governing parking spaces and access for the disabled is not activity protected by the anti-retaliation provisions of the ADA and LAD.

As noted, the ADA's anti-retaliation provision provides a cause of action to an individual who "opposed any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).  In general, the ADA makes unlawful discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases . . . or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Moreover, the ADA contains numerous specific prohibitions of disability discrimination, such as:

> [F]ailure to take such steps as may be necessary to ensure that no
> individual with a disability is excluded, denied services, segregated
> or otherwise treated differently than other individuals because of
> the absence of auxiliary aids and services, unless the entity can
> demonstrate that taking such steps would fundamentally alter the
> nature of the good, service, facility, privilege, advantage, or
> accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii).  In addition, 28 C.F.R. § 36.304(b)(18), under authority of 42 U.S.C. § 12188(b), instructs public accommodations to "create designated accessible parking

spaces" for the disabled. Finally, the Appellate Division of the New Jersey Superior Court has held that the LAD provides a cause of action, in certain circumstances, for failure to provide reasonable parking space accommodations. See Estate of Nicholas v. Ocean Plaza Condominium Ass'n, Inc., 909 A.2d 1144, 1156 (N.J. Super. Ct. App. Div. 2006).

Here, Mr. Holland alleges that he filed a citizen's complaint against Good Wheels for allowing its employees and others to park their vehicles in parking spaces specifically designated for the disabled   Although Defendants point to Stouch v. Township of Irvington, No. 03-6048, 2008 WL 2783338 (D.N.J. 2008) for the proposition that such activity is not protected by the ADA, it is not clear to the Court that Stouch directly addresses this issue. See Stouch, 2008 WL 2783338, at *15. On nearly identical facts, however, a different court in this District found that Mr. Holland's activity, and the response which it provoked, stated a claim for retaliation. See J & R Discount Liquor Gallery, Inc., 2009 WL 1085729, at *4. Thus, at this stage of the litigation, the Court concludes that Mr. Holland's allegations are sufficient to state a claim that he was opposing violations of the ADA and LAD. Accordingly, with respect to Mr. Holland, Defendants Motion to Dismiss shall be denied.

**IV.    Conclusion**

Based upon the foregoing, the Court will grant Defendants' motion to dismiss as to Ms. Cottrell and deny Defendants' motion to dismiss as to Mr. Holland.

Dated:     9-28-2009                                                            /s/ Robert B. Kugler
                                                                                     ROBERT B. KUGLER
                                                                                     United States District Judge