NOT FOR PUBLICATION                                          (Doc. Nos. 31 & 32)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                              :
MARYANN COTTRELL and RICHARD   :
HOLLAND,                                     :
                                              :
            Plaintiffs,                      :          Civil No. 08-1738 (RBK/KMW)
                                              :
      v.                                      :                  **OPINION**
                                              :
GOOD WHEELS, et al.,                    :
                                              :
            Defendants.                      :
_____   :

**KUGLER**, United States District Judge:

        This is a dispute regarding a private business owner's obligation to provide parking

accommodations for the disabled.  Plaintiff Richard Holland claims that he was banned from

entering the Good Wheels car dealership because he assisted in preparing and filing several

citizen complaints against Good Wheels regarding its failure to provide appropriate parking for

the disabled.  Plaintiff asserts claims for unlawful retaliation under the Americans with

Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"),

violations of the New Jersey Civil Rights Act ("NJCRA"), and false imprisonment.  This matter

comes before the Court pursuant to Defendants' motion for summary judgment denying

Plaintiff's claims and Plaintiff's motion for summary judgment declaring that Defendants

retaliated against him in violation of the ADA and NJLAD.  For the reasons discussed below, the

Court denies Plaintiff's motion for summary judgment and grants Defendants' motion for

summary judgment.

## I.      BACKGROUND

Plaintiff lives with Ms. Cottrell and they care jointly for Ms. Cottrell's severely disabled child.  Plaintiff and Ms. Cottrell are self-described advocates for the disabled.  They receive media attention for their efforts to ensure that disabled persons have access to public accommodations.  Those efforts include contacting public authorities about businesses and other public places that do not provide required access to disabled persons.  Plaintiff and Ms. Cottrell often lodge citizen complaints against businesses regarding violations of handicapped parking regulations.

Good Wheels is a car dealership in Glassboro, New Jersey.  Plaintiff testified that he shopped at Good Wheels several times.  (Holland Dep. 25:17).  During Plaintiff's visits to Good Wheels, he noticed cars parked in handicapped spots without handicap tags.  He took pictures of those vehicles on various occasions in February and March 2006.  Using information contained in the pictures, Ms. Cottrell filed several citizen complaints against Good Wheels alleging that Good Wheels permitted unauthorized drivers to park in handicapped spots in violation of N.J. Stat. Ann. § 39:4-207.9(a), which states that businesses must provide clear access to handicapped parking.

Plaintiff's troubles with Good Wheels began on April 8, 2006.  Plaintiff had arranged to meet a friend at Good Wheels to assist him in shopping for a vehicle.  Plaintiff's friend did not arrive for the meeting, but Plaintiff remembers speaking to a Good Wheels representative named "Seth Greene" regarding a vehicle for his friend.  (Holland Dep. 26:18-23).  While Plaintiff was leaving the premises, Defendant Seth Fox, a Good Wheels sales representative, pulled his vehicle in front of Plaintiff's vehicle.  Mr. Fox got out of his car, walked to Plaintiff's car, and told him that he was "no longer welcome" at Good Wheels.  (Fox Dep. 16:11-12).  Mr. Fox told Plaintiff to leave because he was "disrupting customers" by "driving around the building and taking

pictures . . . [of] [t]he handicapped spots." (Fox Dep. 16:9-25). Mr. Fox claims that although he stopped in front of Plaintiff's vehicle, Plaintiff could still exit Good Wheels' premises by driving around Mr. Fox's car and out the exit.

Good Wheels disputes that Plaintiff arrived on the premises to shop with his friend and that Plaintiff spoke to a sales representative regarding vehicles. According to Good Wheels, if Plaintiff spoke with a representative, he would be "logged in [Good Wheels'] salesman reports." (Cert. of Carmine Cucunato ¶ 6). Although Good Wheels does not submit copies of its "salesman reports," Daniel Cucunato, Good Wheels' general manager, certifies that Good Wheels does not have any record of Plaintiff entering the premises except to photograph the handicapped parking spots. (Id. ¶¶ 5-7).

As a result of Mr. Fox's proclamation that Plaintiff was not welcome at the dealership, Plaintiff and Ms. Cottrell sued Good Wheels. They asserted claims for retaliation in violation of the ADA and NJLAD, violations of the NJCRA based on Defendants' unlawful retaliation, and false imprisonment based on Mr. Fox's April 8, 2006 confrontation of Plaintiff.

On September 28, 2009, this Court dismissed Ms. Cottrell because she did not have standing to assert claims against Defendants. Cottrell v. Good Wheels, No. 08-1738, 2009 U.S. Dist. LEXIS 91317, at *16 (D.N.J. Sept. 28, 2009). However, the Court held that Plaintiff had standing to pursue his claims because he alleged that: (1) his hobby of shopping for cars requires that he be able to peruse local car dealerships; (2) Good Wheels is a local dealership; and (3) he visited Good Wheels in order to shop for cars and will continue to visit Good Wheels in the future. Cottrell, 2009 U.S. Dist. LEXIS 91317, at *12-16. The Court concluded that, by banning him from the premises, Good Wheels inflicted a cognizable injury. Id. at *15-16. The Court rejected Defendants' argument that Plaintiff lacked standing to sue for injunctive relief because

3

Good Wheels agreed during the course of the litigation that Plaintiff could return to the premises. Id. at *14-16.  The Court found that "'[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways.'"  Id. at *15 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).  The Court also found that Plaintiff properly alleged claims for retaliation under the ADA and NJLAD and violations of the NJCRA.  Id. at *15-26.

Both Plaintiff and Defendants now move for summary judgment.  Plaintiff moves for summary judgment on his ADA and NJLAD retaliation claims.  He seeks "civil penalties" and "injunctive relief" with "damages to be determined at trial, and the remainder of his claims to proceed in the ordinary course."  (Br. in Supp. of Pl.'s M. for Summ. J., at 1).  Plaintiff also requests in his brief that Good Wheels produce "financial information[,] including tax returns." (Id. at 8).  Plaintiff claims that this discovery is relevant to his claim for punitive damages.

Defendants move for summary judgment denying all of Plaintiff's claims.   They argue that Plaintiff fails to offer evidence proving that he has standing to pursue his claims.  They also argue that Plaintiff's retaliation claims should be dismissed because Plaintiff cannot prove that he was engaged in a protected activity or that Defendants retaliated against him.  Regarding Plaintiff's NJCRA claim, Defendants contend that if Plaintiff's retaliation claims fail, his NJCRA claim also fails.  Finally, Defendants argue that there is no evidence to support Plaintiff's false imprisonment claim.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court

weighs the evidence presented by the parties, the Court is not to make credibility determinations

regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572,

575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, the nonmoving party "may not rest upon the mere allegations or denials of" its

pleadings and must present more than just "bare assertions, conclusory allegations or suspicions"

to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J.

v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  To

defeat a motion for summary judgment, the nonmoving party must present competent evidence

that could be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267,

1275 n.17 (3d Cir. 1995).   "A party's failure to make a showing that is 'sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial' mandates the entry of summary judgment."  Watson v. Eastman Kodak

Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

## III.    DISCUSSION

### A.  Standing to Sue under the ADA and NJLAD

Standing "is a threshold jurisdictional requirement, derived from the 'case or

controversy' language of Article III of the Constitution."  Pub. Interest Research Grp. of N.J. v.

Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better

Env't, 523 U.S. 83, 102 (1998).  However, the party invoking federal jurisdiction bears the

burden of establishing standing "in the same way as any other matter on which the plaintiff bears

the burden of proof, i.e., with the manner and degree of evidence required at the successive

5

stages of litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord FOCUS

v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996).  Thus, "in response to

a summary judgment motion, . . . the plaintiff can no longer rest on . . . 'mere allegations,' but

must 'set forth' by affidavit or other evidence 'specific facts'" that establish standing.  Lujan,

504 U.S. at 561.

> The Third Circuit has articulated three requirements for Article III standing:
>
>> (1) the plaintiff must have suffered an injury in fact -- an invasion
>> of a legally protected interest which is (a) concrete and
>> particularized and (b) actual or imminent, not conjectural or
>> hypothetical;  (2) there must be a causal connection between the
>> injury and the conduct complained of -- the injury has to be fairly
>> traceable to the challenged action of the defendant and not the
>> result of the independent action of some third party not before the
>> court; and (3) it must be likely, as opposed to merely speculative,
>> that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts v. Mirage Resorts, 140 F.3d 478, 484 (3d Cir. 1998) (citing

Lujan, 504 U.S. at 560-61).

Defendants argue that Plaintiff does not have standing because Good Wheels has agreed

to allow Plaintiff to return to its premises.  However, the Court previously rejected that

argument.  See Cottrell, 2009 U.S. Dist. LEXIS 91317, at *15-16.  Under the law-of-the-case

doctrine, Defendants may not reassert that argument on summary judgment.  See Hamilton v.

Leavy, 322 F.3d 776, 787 (3d Cir. 2003) ("The law-of-the-case doctrine limits re-litigation of an

issue once it has been decided in an earlier stage of the same litigation.") (citation omitted).

Defendants next argue that summary judgment is proper on the issue of standing because

Plaintiff cannot prove that he actually visits Good Wheels as a good-faith patron.  According to

Defendants, even if Good Wheels unlawfully banned Plaintiff from its facility, the ban did not

injure Plaintiff because he presents no evidence that he actually patronizes Good Wheels.  In

support of this argument, Defendants rely on Mr. Cucunato certification that Good Wheels keeps records of all sales leads and that Good Wheels does not have any record of Plaintiff ever speaking with a Good Wheels representative about a vehicle.

Even if the Court assumes that Mr. Cucunato's certification is competent evidence regarding the content of Good Wheels' business records, Defendants' argument fails because Plaintiff testified that he is a continuing good-faith patron of Good Wheels.  Plaintiff testified that he patronized Good Wheels at least twice prior to his altercation with Mr. Fox.  On the day of the incident, Plaintiff claims that he was shopping for a friend.  Plaintiff has also certified that "[c]ars and motorcycles are a hobby of" his and that he often visits dealerships to help friends shop for vehicles.  (Holland Cert. ¶ 5).  Thus, at the very least, there is a factual dispute regarding whether Plaintiff actually patronizes Good Wheels, and, therefore, whether a ban would cause injury to him.  Summary judgment denying Plaintiff's retaliation claims for lack of standing is therefore inappropriate.

### B.  Plaintiff's ADA And NJLAD Retaliation Claims

Even if Plaintiff has standing, Defendants argue that Plaintiff's retaliation claims should be denied because he cannot prove that he entered Good Wheels' premises for a legitimate business purpose and because he is not a Good Wheels employee.  According to Defendants, Plaintiff entered the premises solely to monitor Good Wheels' handicapped parking, and, therefore, neither the ADA nor the NJLAD apply to Plaintiff's reporting activities.  (Br. in Supp. of M. Summ. J., at 13).  Defendants also argue that summary judgment is proper because Plaintiff cannot prove the elements of retaliation in violation of the ADA or the NJLAD. Plaintiff responds that the Court previously ruled that both the ADA and NJLAD recognize non-employee retaliation claims and that his enforcement activities are protected by both statutes.

Plaintiff also argues that he is entitled to summary judgment as to Defendants' liability for his retaliation claims because there are no material issues of fact regarding Defendants' liability.

Under the ADA and the NJLAD, a plaintiff establishes unlawful retaliation if he proves: (1) that he was engaged in a protected activity; (2) adverse action by the defendant contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action.  See Stouch v. Twp. of Irvington, 354 F. App'x. 660, 667 (3d Cir. 2009) (listing prima facie case for ADA retaliation claim in the employment context); Victor v. State, 4 A.3d 126, 141 (N.J. 2010) (listing prima facie case for NJLAD retaliation claim in the employment context).  Under the familiar burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the adverse action against the plaintiff.  Id. at 802; see Parker v. Verizon Pa., Inc., 309 F. App'x. 551, 555 (3d Cir. 2009) (applying McDonnell Douglas burden-shifting analysis to ADA retaliation claims); Jamison v. Rockaway Twp. Bd. of Educ., 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990) (applying McDonnell Douglas burden-shifting analysis to NJLAD retaliation claims).  If the defendant proves a legitimate reason for the adverse action, the plaintiff must then prove that the defendant's proffered reasons were not the "true reasons," but instead were a "pretext for discrimination."  Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009).  Although this framework developed in the employment context, it is appropriate to apply it to discrimination claims regarding public accommodations.  See Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350-51 (5th Cir. 2008) (applying McDonnell Douglas burden-shifting framework to public accommodation discrimination claim).

The Court rejects Defendants' arguments that the ADA and NJAD do not apply to Plaintiff's activities but nevertheless grants summary judgment denying Plaintiff's claims because Plaintiff fails to present any evidence that Good Wheels' stated reason for banning him from the premises, i.e., disturbing customers, was pretextual.

First, this Court previously addressed the issue of whether Plaintiff may assert retaliation claims under the ADA and the NJLAD even though he is not a Good Wheels employee. Cottrell, 2009 U.S. Dist. LEXIS 91317, at *17-23.  The Court found that "the plain language of both the ADA and the NJLAD authorize a retaliation suit by a non-disabled, non-employee in the context of public accommodations."  Id. at *18-19.  Thus, under the law-of-the-case doctrine, Defendants may not reassert that argument on summary judgment.  See Hamilton, 322 F.3d at 787.

Second, Defendants argue that the ADA and NJLAD do not protect Plaintiff's reporting activities because he did not arrive on Good Wheels' premises as a good-faith patron. Defendants' argument assumes that Good Wheels could lawfully exclude Plaintiff from the premises if he arrived for the sole purpose of monitoring Good Wheels' compliance with handicapped parking laws but did not cause any disturbance to Good Wheels' customers. However, it would be at odds with both the ADA and NJALD's retaliation provisions to hold that a business open to the public could exclude individuals who intended to "blow the whistle" on discriminatory actions in a manner that did not disrupt customers.  See 42 U.S.C. § 12203(a) (providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made lawful by [the ADA]); N.J. Stat. Ann. § 10:5-12(d) (making it unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under the [NJLAD]").  This does not mean that

businesses may not exclude people from their premises for nondiscriminatory reasons, such as creating a disturbance or harassing customers, or that Plaintiff has a right to conduct his reporting activities in a disruptive manner.  See Uston v. Resorts Int'l Hotel, Inc., 445 A.2d 370, 375 (N.J. 1982) (noting that property owners have the right "to exclude from their premises those whose actions 'disrupt the regular and essential operations of the [premises]'") (quoting State v. Schmid, 423 A.2d 615, 631 (N.J. 1980)).  Businesses open to the public may not, however, exclude people solely because they intend to engage in activity protected by the ADA and NJLAD without causing any disruption.[1]  Thus, even if Plaintiff came to the premises with the intention of reviewing Good Wheels' compliance with handicapped parking laws, he was engaged in a protected activity under the ADA and the NJLAD.

Third, Defendants argue that summary judgment is proper because Plaintiff cannot prove that Defendants retaliated against him in violation of the ADA or NJLAD.  In response, Plaintiff argues that he is entitled to summary judgment because there are no material issues of fact as to Defendants' unlawful retaliation.  It is undisputed that, on numerous occasions, Plaintiff observed unauthorized vehicles parked in Good Wheels' handicapped parking spots.  Plaintiff and Ms. Cottrell observed, photographed, and reported those violations to local authorities. Specifically, Ms. Cottrell lodged citizen complaints against Good Wheels for its failure to provide accessible handicapped parking to the public in violation of N.J. Stat. Ann. § 39:4-207.9(a).[2]  As this Court previously held, those activities are protected under both the ADA and

_____

[1] Defendants argue that they may exclude anyone from their premises who does not visit the premises for the purpose of conducting business.  This is a misstatement of the law.  "[W]hen property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably. On the contrary, they have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises."  Uston, 445 A.2d at 375.

[2] Defendants assert that Plaintiff was not engaged in any protected activity because only Ms. Cottrell signed the citizen complaints against Good Wheels.  That argument fails.  Both the ADA and the NJLAD prohibit retaliation against individuals who oppose violations of the ADA and the NJLAD.  Although Plaintiff did not sign the citizen

10

the NJLAD.  Cottrell, 2009 U.S. Dist. LEXIS 91317, at *23-24 (citing Cottrell v. J&R Disc.

Liquor Gallery, Inc., No. 08-5418, 2009 U.S. Dist. LEXIS 33676, at *14 (D.N.J. Apr. 21, 2009);

Estate of Nicolas v. Ocean Plaza Condominium Ass'n, Inc., 909 A.2d 1144, 1156 (N.J. Super.

Ct. App. Div. 2006)).  Good Wheels banned Plaintiff from its premises contemporaneous with

his enforcement activities, and Mr. Fox testified that he banned Plaintiff because he was engaged

in enforcement activities in a disruptive manner.[3]  Those facts are sufficient to establish a prima

facie case of retaliation.

      However, Defendants proffer evidence of a nondiscriminatory reason for banning

Plaintiff from Good Wheels.  Mr. Fox testified that he banned Plaintiff because he was

"disrupting customers."  (Fox Dep. 16:9-25).  Specifically, Mr. Cucunato testified that on the day

Mr. Fox banned Plaintiff, Mr. Cucunato noticed "two sets of customers" who "became very

antsy" when Plaintiff  "pull[ed] up in this older beat-up type vehicle" and took pictures of the

handicapped spots.  (Cucutano Dep. 29:22-30:11).  According to Mr. Cucunato, the customers

"totally lost their focus [as to] why they were there, which [was] to make a purchase, [and that] is

very important obviously to our corporation."  (Id.).  Those facts establish a legitimate,

nondiscriminatory reason for Defendants' actions.  See Uston, 445 A.2d at 375 (noting that

---

complaints, he opposed Defendants' alleged violations of the ADA and NJLAD by photographing unauthorized cars
in handicapped spots and providing necessary information to Ms. Cottrell so that she could file the complaints.
Thus, Plaintiff was engaged in protected activities.

[3] The Court rejects Defendants' argument that Plaintiff was not banned from Good Wheels because Mr. Fox did not
have authority to issue a ban.  The evidence does not support that proposition.  First, Mr. Fox testified, and
Defendants concede, that Mr. Fox told Plaintiff he was banned from the premises.  Second, Defendants cite only to
testimony by Daniel Cucunato, Good Wheels' general manager, as support for the fact that Mr. Fox did not have
authority to ban Plaintiff from the premises.  However, Mr. Cucunato's testimony does not support that proposition.
Mr. Cucunato testified that sales representatives such as Mr. Fox had the authority to "do the right thing," including
banning a person from the premises if "they in their opinion felt . . . that there was disruption going on."  (Cucunato
Dep. 30:22-31:1-5).  He also testified that "if Mr. Fox told somebody they were no longer welcome, . . . that is as
good as Good Wheels telling them they're no longer welcome."  (Cucunato Dep. 31:6-13).  Thus, contrary to
Defendants' assertion, there is no evidentiary basis for the claim that Plaintiff was not banned from Good Wheels by
Mr. Fox.

property owners have the right "to exclude from their premises those whose actions 'disrupt the regular and essential operations of the [premises]'") (quoting State v. Schmid, 423 A.2d 615, 631 (N.J. 1980)).

Thus, under the McDonnell Douglas burden-shifting analysis, the burden shifts to Plaintiff to prove that Defendants actually banned Plaintiff because he was monitoring their handicapped spots and not because he was conducting his activities in a way that was disrupting customers. See J&D Disc. Liquor Gallery, Inc., 2010 U.S. Dist. LEXIS 104310, at *21-22. Plaintiff offers no evidence to prove that Defendants' proffered reason for banning Plaintiff was pretextual or that he was not disrupting customers. Plaintiff does not, for example, submit any of his own testimony stating that he did not observe any disruption caused by his activities.[4] Nor does he submit any testimony from Defendants admitting that they banned Plaintiff, at least in part, because he sought to expose violations of the ADA and NJLAD. See id. at *14-21 (finding that summary judgment regarding ADA and NJLAD retaliation claims was not proper because defendants admitted that they banned plaintiffs from the premises, in part, because of their protected activities). To survive summary judgment, Plaintiff must offer some evidence that Defendants' proffered reason for banning him was pretextual. Because Plaintiff offers no such evidence, Defendants are entitled to summary judgment denying Plaintiff's retaliation claims.[5]

---

[4] Together, the parties submit a single page from Plaintiff's deposition testimony. Plaintiff's certification does not address disturbance to customers.

[5] Although Plaintiff does not argue that the mixed-motive theory of discrimination applies in this case, the Court notes that the facts of this case may support the application of that doctrine. See J&D Disc. Liquor Gallery, Inc., 2010 U.S. Dist. LEXIS 104310, at *21-22 (discussing application of mixed-motive analysis to retaliation claim under the ADA based on failure to provide disabled parking). However, since the Supreme Court's ruling in Gross v. FBL Fin. Servs., 129 S. Ct. 2343 (2009), courts within this Circuit have concluded that the mixed-motive analysis does not apply to claims under the ADA. See Warshaw v. Concentra Health Servs., 719 F. Supp. 2d 484, 502 (E.D. Pa. 2010). Additionally, even if the Court applied a mixed-motive analysis, summary judgment denying Plaintiff's claims would be appropriate. Under the mixed-motive analysis, if a defendant takes adverse action toward a plaintiff for both discriminatory and nondiscriminatory reasons, the defendant bears the burden of proving that he would have taken the same action notwithstanding his discriminatory considerations. See Gross, 129 S. Ct. at 2348-39. In this case, all the evidence supports the conclusion that Good Wheels banned Plaintiff because he was

### C.  Plaintiff's NJCRA Claim

Defendants are also entitled to summary judgment denying Plaintiff's claim for violations of the NJCRA.  Plaintiff's NJCRA claim is that Defendants' violated his substantive right to be free from retaliation for activity protected under the ADA and the NJLAD.  Thus, because Defendants' are entitled to summary judgment regarding Plaintiff's retaliation claims, they are also entitled to summary judgment regarding Plaintiff's NJCRA claim.

### D.  Plaintiff's False Imprisonment Claim

"False imprisonment is 'the constraint of the person without legal justification.'"  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (quoting Mesgleski v. Oraboni, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000)).  "The tort of false imprisonment has two elements:  (1) 'an arrest or detention of the person against his or her will' and (2) 'lack of proper legal authority or legal justification.'"  Id. (quoting Mesgleski, 748 A.2d at 1138).  To establish an involuntary arrest or detention, a plaintiff most show that the defendant physically restrained the plaintiff or acted in such a way that the plaintiff reasonably believed that he was not free to leave.  Earl v. Winne, 101 A.2d 535, 539-40 (1953).

In support of summary judgment, Defendants submit Mr. Fox's testimony that he parked his vehicle in a manner that did not prevent Plaintiff from leaving the premises at any time.  Mr. Fox testified that the driveway could accommodate "three cars" at one time and that although he pulled in front of Plaintiff, he did not block Plaintiff from exiting through the driveway.  (Fox Dep. 41:8-19).  Plaintiff does not submit any evidence in response to Mr. Fox's testimony.  His certification provides only that he was "humiliated by the way Seth Fox publically treated" him.  (Holland Cert. ¶ 7).  Plaintiff does not certify that he believed Mr. Fox was detaining him or that

---

disrupting customers.  There is no evidence that Good Wheels banned Plaintiff solely because he was engaged in protected activity in a manner that was not disruptive to customers.  Thus, summary judgment denying Plaintiff's claims is appropriate even under the mixed-motive analysis.

Mr. Fox effectively eliminated any means of safely exiting the dealership.  Thus, Plaintiff cannot

support a claim for false imprisonment because he cannot prove that Mr. Fox detained him

against his will or acted in such a way that Plaintiff reasonably believed he was being detained.

### E.  Plaintiff's Discovery Request

Plaintiff's summary judgment papers include the following request:  "Plaintiff . . . would

now like to request financial information from Good Wheels, including tax returns.  This

information is relevant for the purpose of determining punitive damages under the [NJ]LAD."

(Br. in Supp. of Pl.'s M. for Summ. J., at 1).

Plaintiff's request is procedurally improper and moot.  First, to the degree Plaintiff

attempts to obtain documents from Defendants, Plaintiff must make that request by serving

Defendants with document requests pursuant to Rule 34, not by tacking the request to motion

papers filed before the Court.[6]  Second, because the Court enters summary judgment denying

Plaintiffs' claims, the discovery request is moot.  Plaintiff has had ample opportunity to collect

evidence in support of his claims.  Defendants' are entitled to summary judgment.

### IV.    CONCLUSION

For the reasons discussed above, the Court denies Plaintiff's motion for summary

judgment and grants Defendants' motion for summary judgment denying Plaintiff's claims.  An

appropriate Order shall enter.


Dated:3/15/2011                                        /s/ Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge

---

[6] Plaintiff does not suggest that Defendants have objected to prior requests for Good Wheels' financial information.
Thus, there is no basis for the Court to construe Plaintiff's request as a motion to compel discovery.  Additionally,
Plaintiff does not seek relief from a Court Order setting the scope and timing of discovery.  Thus, there is no basis
for the Court to construe Plaintiff's request as a motion to amend or reconsider a prior Order of the Court.